UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Charles L. Craig,<br><br>                Plaintiff,<br><br>vs.<br><br>The South Carolina Department of Correctional; Ms. C. Hilton; Ms. L. Johnson; Ms. B. Reames,<br><br>                Defendants. | C/A No. 2:12-1164-CMC-BHH<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff, Charles L. Craig, ("Plaintiff"), was an inmate in SCDC's Lee Correctional Institution ("LCI") in Bishopville, SC at the time this action was filed, on May 2, 2012. Complaint, Parties; ECF No. 1, p. 2. According to the South Carolina Department of Probation, Parole and Pardon Services ("SCDPPPS") Active Offender Information website, Plaintiff was released from SCDC, on June 1, 2012, to community supervision, through SCDPPPS's Chester County office, with Plaintiff's supervision scheduled to end on May 31, 2014. *See* http://www.dppps.sc.gov/results.asp (last visited June 19, 2012); *see also McCormick v. Wright*, 2010 WL 565303 at *2 n. 5 (D.S.C. Feb 17, 2010) (court may take judicial notice of factual information located in postings on government websites); *Williams v. Long*, 585 F. Supp. 2d 679, 686-88 & n.4 (D. Md. 2008) (collecting cases indicating that postings on government websites are inherently authentic or self-authenticating).

Plaintiff, proceeding *pro se* and *in forma pauperis*, pursuant to 28 U.S.C. §§ 1915 and 1915A, files this action on a state prisoner complaint form, seeking injunctive relief or, in the alternative, monetary damages, pursuant to 42 U.S.C. § 1983.[1] Under the provisions

---

[1] Not itself a source of substantive rights, § 1983 is the procedural mechanism through which Congress provided a private civil cause of action based on allegations of

of 28 U.S.C. §636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., the undersigned United States Magistrate Judge is authorized to review such complaints for relief and submit findings and recommendations to the Court. Having reviewed the Complaint in accordance with applicable law, the undersigned recommends that it be summarily dismissed, without prejudice and without issuance and service of process.

## *PRO SE* AND *IN FORMA PAUPERIS* REVIEW

Under established local procedure in this judicial district, a careful review has been made of the *pro se* complaint pursuant to the procedural provisions of 28 U.S.C. § 1915; 28 U.S.C. § 1915A; the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996); and in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951 (4th Cir. 1995); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

This Complaint has been filed pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit. However, to protect against possible abuses of this privilege, the statute allows a district court to dismiss the case upon a finding that the action is "frivolous or malicious" or "fails to state a claim on which relief may be granted" or "seeks

---

federal constitutional violations by "person(s)" acting "under color of state law." *See Jennings v. Davis*, 476 F.2d 1271 (8th Cir. 1973). The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. *See McKnight v. Rees*, 88 F.3d 417(6th Cir. 1996). To state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that: (1) individual defendant(s) deprived him of a federal right, and (2) did so under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *see Hall v. Quillen*, 631 F.2d 1154, 1155-56 (4th Cir. 1980).

monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i), (ii), (iii). A finding of frivolity can be made where the complaint "lacks an arguable basis either in law or in fact," *Denton*, 504 U.S. at 31. Hence, under § 1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed *sua sponte*. *Neitzke*, 490 U.S. 319; *Allison v. Kyle*, 66 F.3d 71 (5th Cir. 1995).

This Court is required to liberally construe *pro se* complaints. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Such *pro se* complaints are held to a less stringent standard than those drafted by attorneys, *Id.*; *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Cruz v. Beto*, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint, the plaintiff's allegations are assumed to be true. *Erickson*, 551 U.S. at 93 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions"). The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999), construct the plaintiff's legal arguments for him, *Small v.*

*Endicott*, 998 F.2d 411 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**BACKGROUND**

Plaintiff names as Defendants SCDC and three SCDC staff members. Plaintiff identifies the three individual Defendants as follows: Ms. L. Johnson ""the grievance lady," Ms. B. Reames "the classification man[a]ger," and Ms. C. Hilton "the caseworker for the ATU program [Addiction Treatment Unit] at LCI." Complaint, Parties; ECF No. 1, p. 2. The unusual injunctive relief that Plaintiff seeks is to stay in prison until he "maxes-out" his sentence by serving 85% of his fifteen-year sentence, which max-out date he calculates to be June 14, 2012. Plaintiff alleges that he is entitled to be unconditionally released by SCDC, on June 14, 2012, upon completion of 85% of his sentence, rather than being released by SCDC, on June 1, 2012, to be placed on community supervision under SCDPPPS for fifteen months. Plaintiff alleges that, if SCDC will not release him unconditionally, then he wants:

> [to] be granted a civil suit for the amount from each parted Ms. C. Hilton $250,000.00 and Ms. L. Johnson $250,000.00 and Ms. B. Reames $250,000.00 and there property should be seized until it's certain they have this amount. And SCDC for $750,000.00 total amount of $1.5 million. For in slave Mr. Craig punitive damage, negative neglect, hindering of due process, violation of Mr. Craig rights and the incarcerated inmate search is the sold property of SCDC, show the public, that Mr. Craig don't max-out until June.13.012. Mr. Craig could be taken as a fugitive of justice because of false advertise! And be hurted or killed behind this! And it is attach to.

Complaint, Relief; ECF No. 1, p. 8. Plaintiff alleges that he filed a grievance, Lee CI-0460-12, on February 22, 1012, which was denied on February 27, 2012. *See* Complaint, Place of Confinement; ECF No. 1, p. 2.

Plaintiff alleges that Ms. Hilton told him:

4

> it's order by court that he do two year and three months community supervision, Mr. Craig don't consent to this sentencing of SCDC staff! His crime didn't carry probation and if the Judge couldn't give Mr. Craig probation or parole in the began! And he never been up for parole in the passed, Ms. Hilton said look at as furlough and you must accept, because June 1 - 012 isn't 85% of fifteen years, and Mr. Craig will apply and be place on community supervision for the term, Mr. Craig state that June 14-012 was 85% of his sentence, and he wouldn't need community supervision because it's order by court that he serve 85% of he sentence before he can be release!

Complaint, Statement of Claim; ECF No. 1, p. 4. Plaintiff's Complaint goes on to describe his unsuccessful attempt to pursue a Step 1 grievance, which was returned to him unprocessed because he had not first pursued an informal resolution through a request to staff. Then, Plaintiff relates his frustration with SCDC's response, following his unsuccessful attempt at informal resolution, in rejecting his Step 1 grievance as having been filed untimely. Plaintiff does not allege that he pursued a Step 2 grievance or an appeal to the South Carolina Administrative Law Court (SCALC). *See* Complaint, Statement of Claim II; ECF No. 1, p. 4-5; ECF No. 1-1, p. 2-7.

Plaintiff alleges that, when he was convicted and sentenced, on May 17, 2000, to concurrent fifteen year terms, for felony DUI causing death and felony DUI causing great bodily injury, his probation was also revoked on a prior offense. Plaintiff alleges "Mr. Craig only want to go home, without community supervision, he have never complete probation sentence, and if Mr. Craig was never place on probation, he wouldn't be in this mess now." Complaint, Statement of Claim III; ECF No. 1, p. 6. Plaintiff alleges that:

> Ms. L. Johnson and discriminate against Mr. Craig with her co-workers all three stated that three no one inside of SCDC will answer Mr. Craig question about why he can't max-out his sentence! That was there final ruling on the matter of Mr. Craig max-out his sentence and leave South Carolina, after serving twelve years eight months and seventeen days of fifteen years which comes to 4650 days that's 85% of fifteen years SCDC should have release

> Mr. Craig two years and three months ago in order for him to comply! And if they want to release SCDC #266434 a.k.a. Charles L. Craig on June 1. 012 instead of June 14.012 there nothing else behind it! I Charles L. Craig can do the thirteen day and max-out or the ten months after he violate, surly it's less than that if he never leave SCDC!.

Complaint, Statement of Claim V; ECF No. 1, p. 7.

Under South Carolina law, Plaintiff's conviction and sentence for felony DUI causing death is a Class B felony offense and, as such, is a "no parole offense," *See* S.C. Code Ann. §§ 16-1-10(A), 16-1-20(A)(2),(4), 24-13-100, 56-5-2945.[2] Plaintiff's conviction and sentence for felony DUI causing great bodily injury is a Class D felony offense. *Id.* Pursuant to S.C. Code Ann. § 24-13-150(A), Plaintiff, as an inmate serving a sentence for a no parole offense:

> is not eligible for early release, discharge, or community supervision as provided in Section 24-21-560, until the prisoner has served at least eighty-five percent of the actual term of imprisonment imposed. This percentage must be calculated without the application of earned work credits, education credits, or good conduct credits, and is to be applied to the actual term of imprisonment imposed, not including any portion of the sentence which has been suspended.

S.C. Code Ann. 24-13-150(A). Under S.C. Code Ann. 24-21-560(A), except in the case of prisoners sentenced to death or life imprisonment, "any sentence for a 'no parole offense' as defined in Section 24-13-100 *must include any term of incarceration and completion of a community supervision program operated by the Department of Probation, Parole and Pardon Services.*" (emphasis added). Under S.C. Code Ann. 24-21-560(B):

> A community supervision program operated by the Department of Probation, Parole and Pardon Services must last no more than two continuous years.

---

[2] The court takes judicial notice of these legislative facts. *See United States v. Williams*, 442 F.3d 1259, 1261 (10th Cir. 2006); *United States v. Gavegnano*, 305 F. App'x 954, 956 (4th Cir. 2009) (unpublished).

6

> The period of time a prisoner is required to participate in a community supervision program and the individual terms and conditions of a prisoner's participation shall be at the discretion of the department based upon guidelines developed by the director.

## DISCUSSION

Insofar as Plaintiff seeks his unconditional release from SCDC's and/or SCDPPPS's custody and/or supervision, such relief cannot be granted in this § 1983 action. Plaintiff's claim for equitable relief, *i.e.* seeking to "stay[] in SCDC to June 1, 012 to complete the 85% part and max-out his sentence of fifteen years" to obtain his unconditional release rather than release under community supervision, may not be pursued in this § 1983 action. The United States Supreme Court has held, in *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973), that when "the relief [a prisoner] seeks is a determination that he is entitled to immediate release or a speedier release from [custody], his sole federal remedy is a writ of habeas corpus." The United States Supreme Court has found "custody" sufficient to invoke the use of the writ of habeas corpus in cases where the petitioner was not actually incarcerated in certain circumstances, such as when a petitioner's freedom of movement lies within the discretion of the government, as when a petitioner is on parole. *See Jones v. Cunningham*, 371 U.S. 236, 243 (1963).

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court reiterated that release from custody is not a remedy available under 42 U.S.C. § 1983. "Habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." *Heck*, 512 U.S. at 481. Recently, in *Wilson v. Johnson*, 535 F.3d 262 (4th Cir. 2008), the United States Fourth Circuit Court of Appeals

affirmed the continued authority of *Preiser* and *Heck* as a bar which precludes a current prisoner, who could otherwise bring a habeas action, from seeking habeas-type relief in a § 1983 action:

> In *Preiser v. Rodriguez*, 411 U.S. 475 (1973), a group of state prisoners filed a § 1983 action alleging that the New York State Department of Correctional Services' denial of good-time credits violated their constitutional right to due process. The prisoners sought an injunction to force the prison to restore the credits, a remedy which would have reduced the prisoners' sentences. Despite the "literal applicability" of § 1983, the Supreme Court affirmed the district court's dismissal of the claim because the prisoners' "challenge is just as close to the core of habeas corpus as an attack on the prisoner's conviction, for it goes directly to the constitutionality of his physical confinement itself and seeks either immediate release from that confinement or the shortening of its duration." *Id.* at 489. Because the plaintiffs "sought no [monetary] damages, but only equitable relief-restoration of their good-time credits," *id.* at 494, the Supreme Court expressly limited its holding to the equitable relief sought by the prisoners.

*Wilson*, 535 F.3d at 264. When a former prisoner is challenging the validity of his past confinement, and due to his unconditional release "would be left without any access to federal court if his § 1983 claim was barred[,]" the Fourth Circuit has allowed the former prisoner's § 1983 claim to proceed. *See Wilson*, 535 F.3d at 268. Here, however, because Plaintiff remains "in custody" while in the community supervision program, and able to access the federal court to bring a habeas challenge pursuant to § 2241 or § 2254, Plaintiff's claim for equitable relief is not cognizable in this § 1983 action and should be dismissed.

A state prisoner's sole federal remedies for challenging the constitutional validity of his or her custody are a petition for writ of habeas corpus under 28 U.S.C. § 2254 and possibly, but less commonly, a petition for writ of habeas corpus under 28 U.S.C. § 2241, either of which can be sought only after a petitioner has exhausted state court remedies

8

with regard to the conviction and sentence. *See* 28 U.S.C. § 2254(b); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 490-91 (1973) (exhaustion also required under 28 U.S.C. § 2241). Circuit courts are split on whether § 2254 or § 2241 is the proper statute under which a state inmate should proceed when challenging the manner of execution of a state sentence. The majority view is that § 2254 is the exclusive vehicle for habeas corpus relief by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying conviction. *See White v Lambert*, 370 F.3d 1002, 1005 (9th Cir. 2004), overruled on other grounds by *Hayward v. Marshall*, 603 F.3d 546, 553 (9th Cir. 2010). *But see Hamm v. Saffle*, 300 F.3d 1213, 1216 (10th Cir. 2002) (approving of inmates proceeding under § 2241 to challenge execution of state court sentence). The Fourth Circuit noted the split of authority in *Gregory v. Coleman*, 218 F. Appx 266 (4th Cir. 2007), but does not appear to have taken a definitive stance to date.

As noted above, under either § 2254 or § 2241, a petitioner must first fully exhaust his or her state remedies before filing a federal habeas petition. For a § 2254 petitioner, the exhaustion requirement is statutory, pursuant to § 2244(d). Despite the absence of an exhaustion requirement in the statutory language of § 2241(c)(3), a body of case law has developed holding that, while § 2241 establishes jurisdiction in the federal courts to consider habeas corpus petitions, a petitioner must exhaust his state remedies before filing a federal habeas petition, and federal courts should abstain from the exercise of that jurisdiction if the issues raised in a § 2241 petition may be resolved either by trial on the merits in the state court or by other state procedures available to the petitioner in an administrative proceeding, at trial, or on appeal. *See, e.g., Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484 (1973).

In this case, Plaintiff appears to challenge the manner of execution of his sentence and its duration, not the underlying validity of his felony DUI convictions. "[A] state [confinee's] label for his claim cannot be controlling . . . ." *Harvey v. Horan*, 278 F.3d 370, 378 (4th Cir. 2002). Plaintiff's state court recourse for a claim that his sentence has been improperly executed or miscalculated is governed by the South Carolina Supreme Court's decision in *Al-Shabazz v. State*, 338 S.C. 354, 527 S.E.2d 742 (2000). In *Al-Shabazz*, the South Carolina Supreme Court held that an inmate's claim which does not challenge the validity of a conviction or sentence must proceed through the process set out in the South Carolina Administrative Procedures Act (SCAPA), S.C. Code Ann. §§ 1-23-310 through 1-23-400, because, according to the *Al-Shabazz* opinion, requiring review through the SCAPA would provide an "orderly and consistent framework for resolving such matters ... [which] typically arise in two ways: ... (2) when an inmate believes prison officials have erroneously calculated his sentence[.]" *Al-Shabazz*, 338 S.C. at 369, 527 S.E.2d at 750. Thus, before Plaintiff may proceed with a federal habeas corpus petition in this court challenging his continued "custody" under the community supervision program and/or his alleged sentence max-out date miscalculation, Plaintiff must first exhaust his state *administrative* remedies available through the SCDC grievance process, and then he must fully exhaust his state *court* remedies as provided through the SCAPA.

As discussed above, Plaintiff alleges that he filed a Step 1 grievance with the required SCDC personnel at LCI, which was returned unprocessed because Plaintiff had not attempted informal resolution with LCI staff. *See* ECF No. 1-1, p. 2. Plaintiff does not allege that he then filed the required Step 2 grievance, to fully exhausted his administrative remedies under 42 U.S.C. § 1997E. Thereafter, since his sentence execution claim is a

non-collateral and/or administrative matter, if Plaintiff is still unsatisfied with SCDC's response, Plaintiff would then need to begin the process of exhaustion of his State *court* remedies by filing an appeal from the SCDC administrative remedy process with the South Carolina Administrative Law Court (SCALC).  *See Al-Shabazz,* 338 S.C. at 378-79, 527 S.E.2d at 755.

It is clear from the face of Plaintiff's pleading that he did not exhaust his state administrative or state court remedies prior to filing this case.  Thus, even if his pleading were to be construed as a first-time assertion of a § 2241 or § 2254 "manner of execution" habeas challenge to Plaintiff's sentence, this case must still be summarily dismissed because Plaintiff has not yet exhausted his state remedies.  If considered as a habeas petition, the grounds for relief raised in this pleading have plainly not been considered and addressed by any administrative or court tribunals of the State of South Carolina, thus a habeas claim would have to be summarily dismissed.

Plaintiff's claim for monetary damages is also barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).  *See Edwards v. Balisok*, 520 U.S. 641, 647 (1997); *Muhammad v. Close*, 540 U.S. 749 (2004).  *Heck's* applicability to actions challenging the validity of parole decisions and proceedings is well established.  *See, e.g., White v. Gittens*, 121 F.3d 803, 806 (1st Cir. 1997) ("A § 1983 suit like the present, contending that a state parole revocation was constitutionally invalid, challenges the 'fact or duration of [the plaintiff's] confinement'" and is barred by *Heck*); *Crow v. Penry*, 102 F.3d 1086, 1087 (10th Cir. 1996) (*Heck* "applies to proceedings that call into question the fact or duration of parole or probation."); *Miller v. Indiana Dep't of Corrections*, 75 F.3d 330, 331 (7th Cir. 1996) ("The reasoning of *Heck v. Humphrey* is that a prisoner should not be able to use a suit for

11

damages to get around the procedures that have been established for challenging the lawfulness of continued confinement. It is irrelevant whether the challenged confinement is pursuant to a judgment imposing a sentence or an administrative refusal to shorten the sentence by awarding good-time credits."); *McGrew v. Texas Bd. Of Pardons and Paroles*, 47 F.3d 158, 161 (5th Cir. 1995) ("Because an action attacking the validity of parole proceedings calls into question the fact and duration of confinement, it must satisfy the *Heck* element").

The Fourth Circuit, in an unpublished opinion, has agreed that *Heck* applies to § 1983 claims seeking damages for alleged constitutional violations involving parole proceedings. *See Husketh v. Sills*, 34 Fed. Appx. 104, 2011 U.S. Dist. LEXIS 96265, 2002 WL 924288 (4th Cir. 2002) (the preclusive rule of *Heck* extends to parole decisions); *see also Gibbs v. South Carolina Dep't of Probation, Parole & Pardon Svcs.*, 1999 U.S. App. LEXIS 340, at *6-8 (4th Cir. 1999). This District Court has previously held that *Heck* bars damages claims alleging the invalidity of prison disciplinary convictions and parole revocations if the plaintiff has not proven that the disciplinary conviction or parole revocation has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. *See Curtis v. Ozmit*, C/A No. 3:10-3053-CMC-JRM , 2011 U.S. Dist. LEXIS 14236 at *14-16, (D.S.C. 2011).*Duncan v. Cook*, C/A No. 8:09-1186-MBS-BHH, 2010 U.S. Dist. LEXIS 13197 (D.S.C. 2010) adopted by, summary judgment denied by, summary judgment granted by, motion denied by, as moot 2010 U.S. Dist. LEXIS 13124 (D.S.C., 2010).

In the instant action, Plaintiff clearly alleges the invalidity of his continued, current "custody," although in this instance, the challenged custody is Plaintiff's required participation in the community supervision program. Unusually, in this case, Plaintiff does not challenge the fact or duration of his physical confinement in SCDC's LCI, which, in any event, appears to have ended on June 1, 2012. Rather, Plaintiff challenges the fact and duration of his fifteen-month parole term under the community supervision program, which is administered by SCDPPS. However, as discussed above, Plaintiff does not allege that the lawfulness of his continued custody under the community supervision program has been successfully challenged. Plaintiff alleges that that he filed a Step 1 grievance, but does not allege that he has exhausted his SCDC administrative remedies (as is required for a conditions of confinement claim to be brought in federal court) or his state court remedies (as is required for a federal habeas claim).

In *Muhammad v. Close*, 540 U.S. 749 (2004), the Supreme Court stated that to the extent that administrative determinations "do not . . . raise any implication about the validity of the underlying conviction" and do not "affect the duration of time to be served," *Heck* is not implicated. However, where success in a prisoner's § 1983 damages action would implicitly question the validity of a conviction or the duration of a sentence, *Heck* continues to bar such a claim, unless and until the litigant first achieves a favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence on which his § 1983 claim is based. The Supreme Court has not conclusively decided if a *former* inmate can file a § 1983 claim when his habeas avenue to federal court has been foreclosed. *See Muhammad*, 540 U.S. at 752 n. 2. As noted above, when a *former* prisoner is challenging the validity of his past confinement, and due to his release

"would be left without any access to federal court if his § 1983 claim was barred[,]" the Fourth Circuit has said that the former prisoner's § 1983 claim should be allowed to proceed. *See Wilson*, 535 F.3d at 268. Here, however, Plaintiff is still "in custody" for purposes of habeas corpus while he is in the community supervision program, and is able to access the courts to bring a habeas challenge. Thus, as discussed above, Plaintiff's claim for damages is not cognizable in this § 1983 action because he has not previously, successfully challenged the execution or duration of the sentence which he alleges to be constitutionally invalid.

Moreover, even if Plaintiff's § 1983 claim were construed strictly as a challenge to his conditions of confinement - not as a challenge to the execution or duration of his sentence - the complaint in this case must still be summarily dismissed because if fails to state a plausible conditions of confinement claim for which this court may grant relief. In *Sandin v. Conner*, 515 U.S. 472 (1995), the United States Supreme Court held that a change in the condition of a prisoner's confinement that does not exceed the scope of the original sentence gives rise to a federally-protected liberty interest only if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Here, Plaintiff does not allege, and cannot show, an atypical or significant hardship that is imposed on him by being released on parole, as opposed to remaining in prison, when such parole and participation in the community supervision program is mandated for all "no parole offense" prisoners/parolees, pursuant to S.C. Code Ann. 24-21-560.

Finally, insofar as Plaintiff seeks monetary damages from SCDC, SCDC is immune from suit under the Eleventh Amendment, which divests this federal district court of

14

jurisdiction to entertain a suit brought against the State of South Carolina or its integral parts, such as a state agency or department.  *See, e.g., Federal Maritime Comm'n v. South Carolina State Ports Auth.*, 535 U.S. 743 (2002); *Board of Trustees v. Garrett*, 531 U.S. 356 (2001); *Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000); *Alden v. Maine*, 527 U.S. 706 (1999); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984).  Although the express language of the Eleventh Amendment only forbids suits by citizens of other States against a State, the Eleventh Amendment bars suits against a State filed by its own citizens.  *See Belcher v. South Carolina Bd. of Corr.*, 460 F. Supp. 805, 808-809 (D.S.C. 1978); *Simmons v. South Carolina State Highway Dep't*, 195 F. Supp. 516, 517 (E.D.S.C. 1961).

## RECOMMENDATION

Accordingly, it is recommended that the District Court dismiss the Complaint in the above-captioned case, without prejudice and without issuance and service of process. Plaintiff's attention is directed to the important notice on the next page.

July 10, 2012  
Charleston, South Carolina

s/Bruce Howe Hendricks  
United States Magistrate Judge

**Notice of Right to File Objections to Report and Recommendation**

The petitioner is advised that he may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Larry W. Propes, Clerk of Court**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).